UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

DESIREE MORALES,

    Plaintiff,

        v.                                              No. 3:16-cv-0003(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## RULING ON PENDING MOTIONS

Plaintiff Desiree Morales has filed this appeal of the adverse decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 16]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 17]. The undersigned heard oral argument on January 25, 2017. For the reasons that follow, the Commissioner's decision is reversed and the matter remanded for further proceedings.

## Legal Standard

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

**Background**

Plaintiff filed her DIB and SSI applications in September 2009, alleging a disability onset date of July 13, 2009. Her claims were denied at both the initial and reconsideration levels. Thereafter, Plaintiff appeared and testified at a hearing before administrative law judge Ronald J. Thomas ("ALJ Thomas") on April 15, 2011. On May 24, 2011, ALJ Thomas issued a decision denying Plaintiff's claims. The Appeals Counsel remanded the matter on September 16, 2011. ALJ Thomas held a second hearing on March 15, 2012, and issued a second unfavorable decision on April 26, 2012. On July 26, 2013, the Appeals Council again remanded the matter for a new hearing, directing it be assigned to a different administrative law judge. On December 16, 2013, Plaintiff appeared and testified at a third hearing before administrative law judge Matthew Kuperstein ("the ALJ"). The ALJ issued a decision denying Plaintiff's claims on March 21, 2014 ("the ALJ's decision"). The Appeals Council denied review of the ALJ's decision on November 5, 2015, making it the final decision of the Commissioner. This action followed.

Plaintiff was thirty-one years old on the alleged onset date. (R. 31). She has completed high school and has some vocational training as an administrative assistant. (R. 31, 87). She last worked in July 2009 as a senior bank teller. (R. 87-88). Plaintiff testified she stopped working because of migraines and anxiety. (R. 89). She has past work experience as a housekeeper, bank teller, and supervisor at a fast food restaurant. (R. 89-90).

At oral argument the parties stipulated to Plaintiff's medical background as presented in the briefs accompanying both parties' motions. The Court adopts these facts and incorporates them by reference herein.

**The ALJ's Decision**

The ALJ followed the sequential evaluation process for assessing disability claims. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. 24). At Step Two, the ALJ found the following severe impairments: migraine headaches; cephalgia (cluster headaches); fibromyalgia; major depression, and more recently posttraumatic stress disorder. (*Id.*). The ALJ also noted a history of sinus surgery with a history of rhinitis and rhino-sinusitis that are improved and nonsevere, nonsevere arthritis in her lower extremities, and nonsevere intermittent back and hip pain. (*Id.*). At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 25-26). Next, the ALJ determined Plaintiff retained the following residual functional capacity[1]:

> Plaintiff can perform sedentary work except she can stand/walk for two to three hours per day; she can sit for six hours per day; she should avoid overhead reaching with her dominant right hand; she should not perform hazardous work such as working at unprotected heights or operating dangerous machinery; she can understand, remember, and perform simple instructions and make simple, work-related decisions; she should have no interactions with the general public, but can perform work which involves little collaboration or teamwork with other workers; she can relate adequately, for task purposes, with coworkers and supervisors.

(R. 26-31). At Step Four, the ALJ found Plaintiff was unable to perform her past relevant work (R. 31). Finally, at Step Five, the ALJ relied on the testimony of a vocational expert ("VE") to find that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform given her age, education level, and RFC.[2] (R. 31-33). Accordingly, the ALJ found Plaintiff not to be disabled.

---

[1] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[2] The VE testified that a person with the assessed RFC could perform the jobs of call out operator, addresser, and polisher (such as of optical goods). (R. 32).

**Discussion**

Plaintiff raises several issues on appeal which pertain to the sufficiency of the RFC. The Court agrees with Plaintiff that the ALJ's RFC assessment is not supported by substantial evidence. One of Plaintiff's mental health treatment providers, Dr. Parekh, completed a mental RFC assessment checklist on October 13, 2013. He opined that Plaintiff had some moderate limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. (R. 1714-15). He found no marked limitations in any of these areas. (*Id.*). Dr. Parekh noted that Plaintiff has a history of migraines, which "exacerbate her depression and anxiety cause further limitations." (R. 1715).

The ALJ also considered a report from Dr. Shilling, a neurologist who evaluated Plaintiff's headaches on October 14, 2013. Dr. Shilling noted a recent MRI was normal except for recurrent sphenoid sinusitis. (R. 1682). He reported Plaintiff's headaches were "chronic and daily about a 7/10 point scale." (*Id.*). Upon examination, Plaintiff had normal vision, normal range of motion in the spine, and a normal mental status exam. (R. 1684). Dr. Shilling assessed headache/cephalgia, anxiety disorder, and depression. (*Id.*). He reviewed the various medications and treatment options Plaintiff had tried for headache relief, and observed they had all failed. (R. 1682, 1685). The ALJ characterized Dr. Shilling's evaluation as a "detailed" report and entitled to "more weight as a treatment assessment plan than checklists for appeals purposes." (R. 29).

It is not clear whether Dr. Parekh should be considered a treating source whose opinion should be entitled to controlling weight provided it was well-supported by, and not inconsistent with, the evidence of record. Since he completed the RFC questionnaire at the third treatment session, it is possible that Dr. Parekh had not established a treating relationship at that time.

Whether Dr. Parekh's opinion was one from a treating source, however, is not determinative of the matter. The Court need not find a violation of the treating physician rule in order to remand this case. The error requiring remand lies in the lack of opinion evidence (or analysis of opinion evidence) supporting the RFC determination. Here, the ALJ expressed his view that checklists were not particularly helpful in evaluating a claimant's functional limitations. (*See* R. 29). The ALJ does not discuss RFC questionnaires completed by other mental health providers (Ms. Flores in February 2010, Ms. Chandler, LSCW, in April 2011, and CT Behavioral Health in May 2012). While it is questionable how helpful these opinions may be (one is based on Plaintiff's self-reports and none of them are particularly detailed), the ALJ does not address them meaningfully. And, there was no opinion evidence the ALJ did give significant weight to. This leaves the Court guessing as to how the RFC accurately reflects Plaintiff's functional limitations. The ALJ had before him no opinion evidence regarding functional limitations stemming from Plaintiff's migraines, which were her primary complaint. And, while Dr. Parekh's opinion arguably does support the RFC as assessed, he does note an interplay between plaintiff's mental impairments and her headaches that would "cause further limitations." (R. 1715). The ALJ does not identify any opinion evidence addressing Plaintiff's functional limitations based on her conditions *in combination*. While the record is replete with treatment notes, these notes do not (nor would one expect they should) reflect Plaintiff's limitations, particularly as to how her conditions, in combination, affect her ability to work on a sustained basis. In all, the ALJ had before him a long record with a relative paucity of opinion evidence. As a result, the Court does not see how the ALJ came to the assessed RFC. *See Holste v. Colvin*, No. 15-CV-582-FPG, 2016 WL 3945814, at *4 (W.D.N.Y. July 19, 2016) (ordering remand when it was not clear "how the ALJ arrived at his RFC determination, because the ALJ's summary of the raw medical

5

evidence fails to address [the claimant's] functional abilities or link that evidence to the RFC."). With such questions left unanswered, the RFC cannot be said to be supported by substantial evidence.

The Commissioner relies on *Monroe v. Comm'r of Soc. Sec.*, No. 16-1042-CV, 2017 WL 213363, at *3 (2d Cir. Jan. 18, 2017), in support of her argument that an ALJ does not necessarily need to have a medical opinion in order to make an RFC determination. In *Monroe*, the court concluded that an RFC was supported by substantial evidence, despite the ALJ's rejection of a treating physician opinion, because the ALJ "reached her RFC determination based on [the treating source's] contemporaneous treatment notes." *Id.* at *3. Those notes, the court explained, provided evidence "relevant to [the claimant's] ability to perform substantial gainful activity" and "relevant to her functional capacity." *Id. Monroe* is readily distinguishable from this case because the ALJ here did not discuss treatment notes with any vocational or functional relevance when he formulated the RFC. Rather, the ALJ failed to identify any evidence of the limitations Plaintiff experiences due to her headaches, her mental impairments, and these conditions in aggregate; without such evidence, there is not substantial evidence to support the RFC determination.

While, in some circumstances, an ALJ may make an RFC finding without treating source opinion evidence, the RFC assessment will be sufficient only when the record is "clear" and contains "*some* useful assessment of the claimant's limitations from a medical source." *See Staggers v. Colvin*, No. 3:14-cv-717(JCH), 2015 WL 4751123, at *3 (D. Conn. Aug. 11, 2015) (emphasis in original); *see also Monroe*, 2017 WL 213363, at *3 (when a record "contains sufficient evidence from which an ALJ can assess the claimant's residual functional capacity, a medical source statement or formal medical opinion is not necessarily required.") (internal

6

quotation marks and citations omitted). Here, as discussed above, and as the ALJ himself points out with his criticism of the utility of RFC checklists that were before him, the record does not contain a "useful assessment of claimant's limitations from a medical source" such that the RFC is adequately supported. *Staggers*, 2015 WL 4751123, at *3.

There are additional aspects of the ALJ's decision the Court finds deficient. For example, in analyzing Plaintiff's credibility, the ALJ does not discuss Plaintiff's activities of daily living. Nor does he consider the consistency of Plaintiff's testimony throughout the three administrative hearings. The result is that the credibility determination feels incomplete. Finally, the RFC states that Plaintiff should "avoid overhead reaching with her dominant, right hand." (R. 26). The record is pellucid that it is the left, and not the right, arm with which Plaintiff has difficulty. The Commissioner characterizes this error as a "typo," but one cannot help but feel it adds to the general slackness of the decision. The Court makes no finding as to whether these deficiencies amount to legal error in and of themselves, but rather mentions them so that the ALJ may consider them upon remand.

## **Conclusion**

For the reasons set forth above, Plaintiff's motion to reverse [Doc. # 16] is GRANTED and the Commissioner's motion to affirm [Doc. # 17] is DENIED. The matter shall be remanded for a new hearing so that the ALJ may further develop the record, reassess the RFC, and then proceed through the sequential evaluation process. On remand, the Commissioner will also address the other claims of error not discussed herein.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of

Civil Procedure.  Appeals can be made directly to the appropriate United States Court of Appeals from this judgment.  *See* 28 U.S.C. § 636(c)(3); Fed.R.Civ.P. 73(c).

SO ORDERED, this  3rd  day of February, 2017, at Bridgeport, Connecticut.

                                             */s/ William I. Garfinkel*
                                            WILLIAM I. GARFINKEL
                                            United States Magistrate Judge